FILED

02/27/2017

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 22, 2016 Session

## CLAY HARRIS DALTON v. JERRY SANDIFER ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 14-10-333      Telford E. Forgety, Jr., Chancellor**

---

### No. E2016-00696-COA-R3-CV

---

This case involves a dispute over the commission earned from a real estate transaction. The parties disagree as to whether the plaintiff, Clay Harris Dalton, is entitled to a part of the commission on the transaction. Jerry Sandifer is a principal real estate broker licensed in Tennessee. He is the sole proprietor of Tennessee Realty Pros, LLC (TRP), a Tennessee limited liability company. Dalton is an affiliate real estate broker licensed in Tennessee. On September 6, 2013, Dalton registered his real estate license with Sandifer and TRP (collectively the Brokerage). On November 1, 2013, TRP secured a commercial exclusive right to sell listing agreement from a seller. The agreement encompasses the real estate sold in the transaction at issue. Eventually, TRP procured a buyer, and on March 23, 2014, the buyer executed a commercial purchase and sales agreement. That agreement listed Dalton as the Buyer's Designated Agent and selling licensee. It listed Sandifer as the Seller's Designated Agent and listing licensee. On September 30, 2014, the real estate closing took place, resulting in a total broker's commission of $97,400. Because only one brokerage was involved in the transaction, the entire commission was paid to TRP. Dalton claims that he is entitled to a share of the commission. He further asserts that he had an agreement with Sandifer that Dalton would be paid a share of the commission on the buyer's side of the transaction. Because the Brokerage refused to disburse any of the commission to Dalton, he filed a complaint seeking his share of the commission. The trial court found that, based on the customary and contractual commission split at TRP, Dalton is entitled to $34,090 for acting as the buyer's agent. The court also found that Dalton was entitled to $2,000 for his efforts in listing real property for the Brokerage. Accordingly, the trial court awarded Dalton a total judgment of $36,090. The Brokerage appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Nicholas Black, Maryville, Tennessee, for the appellants, Jerry Sandifer and Tennessee Realty Pros, LLC.

Scott D. Hall, Sevierville, Tennessee, for the appellee, Clay Harris Dalton.

## OPINION

### I.

Jerry Sandifer is the founder and sole owner of TRP, which is involved in the sale and purchase of real estate. Sandifer has served as the principal broker for the company since he founded it. Clay Dalton is an affiliate broker licensed in Tennessee. Dalton registered his license as an affiliate broker with the Brokerage in September 2013.

At TRP, the customary practice is that an affiliate broker who closes a transaction splits the commission earned with TRP. Dalton and Eric McPeake, another affiliate broker at TRP, testified regarding the customary commission split at TRP. Both testified that when an affiliate broker makes a sale, the customary practice is that the affiliate broker earns seventy percent of the commission and TRP receives thirty percent of the commission. Sandifer did not dispute that this is the customary commission split at TRP.

On November 1, 2013, in the transaction at issue, TRP secured a listing agreement from the seller. This agreement gave TRP the right to sell a thirty-three acre tract of land. The transaction that is the subject of this case involves a 2.5 acre parcel of the larger tract. The listing agreement indicates that the "Firm shall practice Designated Agen[cy] . . . in this transaction." The agreement did not establish a dual agency relationship in which the licensee would serve as the agent for more than one party in the transaction. Under the terms of the agreement, dual agency "status may only be employed upon full disclosure to each party and with each party's informed consent." The listing agreement designates Sandifer as the designated agent for the seller.

In addition to the listing agreement, Sandifer and the seller executed a confirmation of agency status form. That form indicated that Sandifer was serving as "Designated Agent for the Seller" rather than a dual agent requiring the consent of both the seller and the buyer.

In February 2014, TRP obtained a commercial letter of intent to purchase the property from the buyer. This letter indicates that Sandifer represents the seller in the

transaction. The letter, however, does not indicate a representative for the buyer and is not signed by the buyer.

The following month, the buyer executed a commercial purchase and sales agreement for the property with a purchase price of $1,790,000. This agreement defines the agency relationship among the parties. The agreement indicates that the broker representing the seller, the listing company, is TRP. The designated agent for the seller and independent licensee for the listing company is Jerry Sandifer. In addition, the broker representing the buyer, the selling company, is TRP. The designated agent for the buyer and independent licensee for the selling company is Clay Dalton. Thus, TRP is the broker for both the listing company and the selling company, but a different independent licensee is assigned to each party.

Because the same broker represents both the buyer and seller, paragraph 12(A)(5) of the purchase and sales agreement applies to the transaction. That provision contains the following language:

> If Buyer and Seller are *both being represented by the same Broker*, a relationship of *either* [ ] designated agency, OR, [ ] Facilitator OR [ ] dual agency *shall exist*.

(Bracketing in original; emphasis added.) On the executed document, however, none of the boxes are selected to indicate the relationship that exists.

Subsection (a) of this paragraph reads as follows:

> **Designated Agency Assignment.** [*Applicable only if designated agency has been selected above*]
>
> The Broker has assigned affiliate Licensee __Clay Dalton__ to work exclusively with the Buyer as Buyer's Designated Agent and affiliate licensee __Jerry Sandifer__ to work exclusively with Seller as Seller's Designated Agent. Each Designated Agent shall . . . not represent in this transaction the client assigned to the other Designated Agent.

(Bold font, italics, and underlining in original.)

Sandifer makes much of the fact that the designated agency box was not checked on the executed document. He asserts that designated agency is not applicable because the box is not selected to indicate that that status applies. Sandifer also argues that Dalton did very little to close the transaction.

- 3 -

At some point between the execution of the purchase and sales agreement and the closing, Sandifer indicated to Dalton that he would not be paid a commission on the transaction. Due to this representation, Dalton became concerned that he would lose the commission to which he was entitled based on the customary split with TRP. Accordingly, he hired counsel. The transaction would eventually close on September 30, 2014.

The total commission paid to TRP for the transaction was $97,400. This represents six percent of the sale price of $1,790,000 less an agreed upon $10,000 commission discount to facilitate the closing of the transaction. Customarily, half of the commission would be paid to the listing broker and half would be paid to the selling broker. Because agents from TRP represented both the buyer and the seller, it received the entire amount of the commission to disburse. Sandifer, however, refused to pay any of the commission to Dalton. Based on Sandifer's failure to pay him, Dalton filed a complaint against the Brokerage. He alleged breach of contract, conversion, quantum meruit, and unjust enrichment and sought his share of the commission.

Following a bench trial, the court awarded a judgment in favor of Dalton. The court found that Dalton acted as the buyer's designated agent and that he maintained that status throughout the closing. The court also found that "the agreed upon and customary brokerage division of commissions was 30% to the brokerage, and 70% to the agent/affiliate broker." Dalton's seventy percent of the buyer's half of the commission amounted to $34,090. In addition, the court found that Dalton was entitled to $2,000 for his work in listing real property for the Brokerage, awarding Dalton a total judgment of $36,090. The Brokerage appeals. Additionally, Dalton requests that we increase the judgment of $2,000 for listing real property to $10,000 for a total award of $44,090.

## II.

The Brokerage raises the following issues, as quoted verbatim from its brief:

> Whether the trial court erred when it found [Dalton] was entitled to a share of the buyer's side commission[.]

> Whether the trial court erred when it found [Dalton] was entitled to $2,000[] in compensation on the listing side of the transaction[.]

(Paragraph numbering in original omitted.)

## III.

Where, as here, the trial court sits without a jury, we review the trial court's factual findings de novo upon the record. We will presume the trial court's findings of fact are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). "Questions of law . . . are reviewed de novo with no presumption of correctness." *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010).

## IV.

The trial court found that Dalton was entitled to a commission for acting as the Designated Buyer's Agent and that he had also earned money for the work he did in securing the listing for the Brokerage. The trial court's judgment states the following:

> [T]he Court is of the opinion that Judgment should be awarded to [Dalton] in the amount of $36,090. This Judgment awarded is based upon the contract between the parties, concerning [Dalton's] claims for commissions and amounts due for work which [Dalton] performed as a real estate affiliate broker.
>
> It was uncontested that [Dalton] was licensed and had worked as an affiliate broker/agent at [the Brokerage] . . . . The evidence shows, and was uncontested, that the sale of listed property . . . was closed in accordance with the Settlement Statement moved into evidence. Further, the Court finds that the agreed upon and customary brokerage division of commissions was 30% to the brokerage, and 70% to the agent/affiliate broker.
>
> The documents admitted into evidence identify [Dalton] as the Designated Buyer's Agent. The record reflects that [Dalton] maintained such status and position through the closing of the real property sale, and was entitled to the customary and contractual commission split being in the amount of $34,090.
>
> Additionally, the evidence presented at trial demonstrated that [Dalton] earned $2,000 for work associated with the listing of real property.

-5-

In making its ruling, the court "conclude[d] that Mr. Dalton is entitled to a share of the commission, and for a lot of reasons . . . ." The court noted that, in the purchase and sales agreement prepared by Sandifer, he "assigned affiliate licensee, Clay Dalton, to work exclusively with the buyer as the buyer's designated agent. [The buyer] signed off on that contract." A buyer is not required to have an agent, so there would not be any reason for Dalton's name to be there if he had nothing to do with the transaction.

The court also found that Sandifer had neither a listing contract nor a sales contract prior to Dalton joining TRP. It was not as if Dalton joined TRP after the deal was in place and then sought a commission. Even if Sandifer had some relationship with the seller and the buyer before Dalton started with TRP, the court noted that nothing had been executed. The court stated that "when the sales contract was executed, it was Mr. Sandifer himself who put Mr. Dalton's name in as designated agent for the buyer[, and] . . . that must have been done for some reason." Because it was done this way, it helped TRP by allowing it to keep one hundred percent of the commission rather than splitting it with another brokerage for the buyer.

According to the court in making its ruling, there had to be some kind of contractual relationship between Sandifer and Dalton. There was nothing in writing, but there was obviously some relationship. The court focused on the contract that listed Dalton as the designated agent for the buyer and noted that "when a contract is ambiguous or not clear, it is construed must strongly against the party who wrote it." Accordingly, despite the fact that the designated agency box was not checked, the court found that Dalton was involved in the transaction and entitled to commission for the sale.

The evidence in the case supported the notion that half of the commission went to the buyer's broker and there was a split of that with seventy percent going to the agent and thirty percent going to the brokerage house. Based on this arrangement, the court found that Dalton is entitled to $34,090 of the commission. Finally, the court found that the evidence demonstrates that there was an agreement that Dalton would be compensated for his work in listing real property. The amount to which he is entitled for that work is $2,000 based on Sandifer's representation and the fact that other affiliate brokers were paid that same amount for their efforts in listing real property.

We hold that the evidence does not preponderate against the trial court's factual findings.

### V.

### A.

Sandifer claims that Dalton had little involvement in the transaction and that he did not earn a commission from the sale at issue. The record, however, indicates that

-6-

Dalton was in fact involved in the transaction. We find that the facts in this case demonstrate that Dalton earned and is entitled to a commission from the sale of the real property at issue.

In its brief, the Brokerage argues that the purchase and sales agreement does not support Dalton's argument that he is entitled to a commission from the transaction. They assert that, because the box designating the agency relationship as a designated agency is not checked, it does not apply to the contract. We are not persuaded by this argument. Our review of the contract demonstrates that a designated agency relationship does apply to this transaction. For the purpose of aiding the reader of this opinion, a copy of the relevant page of the purchase and sales agreement is attached as Exhibit 1.

As quoted previously, paragraph (12)(A)(5), the provision on which the Brokerage relies, contains the following language:

> If Buyer and Seller are *both being represented by the same Broker*, a relationship of *either* [ ] designated agency, OR, [ ] Facilitator OR [ ] dual agency *shall exist*.

(Emphasis added.) On the executed contract, however, none of the boxes were checked to make a selection under this provision. The contractual language, however, is clear that the Brokerage cannot avoid one of these relationships applying to the transaction. The plain language is clear that one of these relationships *shall exist* when the buyer and seller are represented by the same broker. Thus, the transaction must involve *either* a designated agency, a facilitator, or a dual agency.

On the executed agreement, Sandifer completed the information under subsection (a) for designated agency. This subsection, as drafted, reads:

> **Designated Agency Assignment.** *[Applicable only if designated agency has been selected above]*
>
> The Broker assigned affiliate licensee __Clay Dalton__ to work exclusively with Buyer as Buyer's Designated Agent and affiliate licensee __Jerry Sandifer__ to work exclusively with Seller as Seller's Designated Agent. Each Designated Agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other Designated Agent.

(Bold font, italics, and underlining in original.)

We find that this "designation" applies to the transaction at issue. Even though the provision says that it is applicable *"only if designated agency has been selected above*[,]" Sandifer, the drafter of the agreement, input the information in this section. It was Sandifer who designated Dalton as the Buyer's Designated Agent and himself as the Seller's Designated Agent. His failure to check the designated agency box does not allow him to avoid that selection. The language is clear that one of the relationships defined in paragraph (12)(A)(5) of the agreement shall exist if the Brokerage represents both parties to the transaction. Because that is the case here, one of them must apply. Unless one of the other defined relationships exist, a designated agency must apply to this transaction.

If the Brokerage keeps the entire commission from the transaction and the designated agency relationship does not apply to the transaction, either a dual agency or a facilitator relationship must exist. The agreement defines a Facilitator as follows:

> The licensee is not working as an agent for either party in this consumer's prospective transaction. A Facilitator may advise either or both of the parties to a transaction but cannot be considered a representative or advocate for either party.

The Brokerage has made no argument that it acted as a facilitator in this transaction. We find that the "facilitator" designation is not applicable. Thus, either a designated agency or dual agency relationship must apply to the transaction.

It seems to us that the Brokerage is trying to act as a dual agent in this transaction. At least that is what its argument amounts to. TRP represented both parties to the transaction and received the entire commission for the sale. That is clear from the U.S. Department of Housing & Urban Development Settlement Statement's division of commission, which designates Tennessee Realty Pros, LLC to receive $97,400. Furthermore, the form for additional disbursements from broker's commission designates TRP as both the listing and selling agent and payee of $97,400. Thus, it is clear that the Brokerage received the entire amount of the commission for the transaction. If a dual agency relationship applies, that relationship requires more than the designated agency relationship in the agreement. Paragraph 15(A)(5)(c) of the relevant agreement provides as follows:

> **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above]* Seller and Buyer are aware that Broker is acting as a dual agent in this transaction and consent to same.

(Bold font, bracketing, and italics in original.) The provision then provides five disclosures that a broker acting as a dual agent must make to the seller and the buyer.

- 8 -

Furthermore, subsection (d), "Material Relationship Disclosure," is required with a dual agency relationship. That subsection requires the broker to disclose any material relationships and requires the seller and the buyer to initial the agreement.

The executed agreement, however, contains neither a box checked to indicate that a dual agency relationship exists nor the initials of the seller or the buyer. In this case, Sandifer did not indicate on the executed agreement that a dual agency relationship exists, did not make the required disclosures, and did not obtain the buyer's or the seller's initials on the form. If Sandifer, however, receives the entire commission from the transaction and distributes none of it to an affiliate broker, he would be acting as a dual agent. He would receive both the seller's side commission and buyer's side commission, indicating that he represented both sides and acted as a dual agent. Based on this analysis, we hold that a dual agency relationship does not apply to this transaction.

While the designated agency box was not checked on the agreement, Sandifer entered Dalton's name as the Buyer's Designated Agent and his own name as the Seller's Designated agent. Furthermore, while the agreement indicates the designations are "For Informational Purposes Only[,]" the executed agreement designates Dalton as the independent licensee for the selling company and Sandifer as the independent licensee for the listing company. Each of these designations must mean something. We find that the agreement is clear that Sandifer is the agent for the seller and that Dalton is the agent for the buyer. Sandifer's failure to check the box for a designated agency relationship does not allow him to act as a dual agent and keep the entire commission from the transaction. We hold that a designated agency relationship applies to this transaction with Dalton acting for the buyer and Sandifer acting for the seller.

The listing agreement and confirmation of agency status form lend additional support to the conclusion that a designated agency relationship exists for this transaction. The listing agreement defines the types of agency relationships. Paragraph 12 provides that a dual agency relationship "may only be employed upon full disclosure to each party and with each party's informed consent." The listing agreement appoints Sandifer as the Designated Agent for the seller and provides that the "Firm shall Practice **Designated Agen[cy]** . . . in this transaction." (Bold font and underlining in original.) Finally, on Sandifer's confirmation of agency status form to the seller, he indicated that he is the "Designated Agent for the Seller." These documents demonstrate that, while the box was not checked to specify the transaction involved a designated agency relationship on the purchase and sales agreement, that relationship does apply to this transaction.

Sandifer argues that Dalton was not involved in the transaction and is not entitled to any of the commission. We are not persuaded by his argument. The record indicates that Dalton was indeed involved in the transaction. Dalton registered his license with TRP before the listing agreement or purchase and sales agreement were inked. It is not as if he entered the scene after the sale at issue had been initiated. He assisted with

listing and marketing the property. It is not entirely clear who secured the buyer of the property, but the buyer signed the agreement that designated Dalton as his agent. Thus, if the buyer had any questions or issues during the transaction, he would know to contact Dalton. Dalton was the responsible agent for handling any issues and assisting the buyer with the transaction. Furthermore, Dalton attempted to remain abreast of the status of the transaction by conversing with Sandifer before the closing. We find that Dalton did, in fact, serve as the agent for the buyer.

Because a designated agency applies with Dalton acting on behalf of the buyer, he is entitled to a share of the commission for the transaction. The parties agree that the total commission earned from a real estate transaction is split between the listing broker and the selling broker, with each entitled to fifty percent of the commission. In this case, the total commission was $97,400, so the commission to which the selling side is entitled is $48,700. Dalton is entitled to the customary portion of the selling side commission for representing the buyer. The testimony at trial makes it clear that the customary commission split at TRP entitles the affiliate broker to seventy percent of the commission earned. Accordingly, Dalton is entitled to $34,090, *i.e.*, 70% of $48,700. We affirm the trial court and hold that Dalton is entitled to $34,090 in commission for representing the buyer in this transaction.

## B.

Dalton argues that he was promised and is entitled to $10,000 for his work in listing real property for the Brokerage, rather than $2,000. In his brief, he asserts that "[b]ased on the parties' agreement, the text message stating the $10,000 listing-side commission, and the uncontested fact that such fee is fair and reasonable, [he] is contractually entitled to [that amount]." We disagree.

Eric McPeake, another affiliate broker with TRP, testified that the agreement for compensation for listing the property was that affiliate brokers could earn up to $10,000 for work with listing real property. He testified that he and others were paid $2,000 for their work on listing. Sandifer also testified that he told the affiliate brokers that they could earn between $2,000 and $10,000 for helping with listing property. Furthermore, Dalton was, in fact, sent a check for $2,000.

Dalton asserts that a text message confirms that he is entitled to $10,000. The text message to which Dalton refers, however, indicates that he was waiting to "get the 10k from the gobble-gibson . . . closing." This message addresses payment for the closing, rather than the listing. Sandifer's response of "Ok" in no way indicates that there was an agreement for him to be paid $10,000 for his work with listings. Dalton has failed to carry his burden of proving that he is entitled to $10,000 for helping to list property. The evidence indicates that Dalton earned $2,000 for his work with the listing. We affirm the

trial court's finding and hold that Dalton is entitled to $2,000 for his work with listing property.

## VI.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellants, Jerry Sandifer and Tennessee Realty Pros, LLC. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

# EXHIBIT 1

**12 Agency and Brokerage.**

**A. Agency.**

(1) In this Agreement, the term "Broker" shall mean a licensed Tennessee real estate broker or brokerage firm and, where the context would indicate, the Broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater that what is set forth in their brokerage engagements, the Tennessee Real Estate Broker License Act of 1973, as amended, and the Tennessee Real Estate Commission rules and regulations.

(2) If one of the parties is not represented by a Broker, that party is solely responsible for their own interests, and that Broker's role is limited to performing ministerial acts for the unrepresented party.

(3) The Broker, if any, working with the Seller is identified on the signature page as the "Listing Company"; and said Broker ☒ is OR ☐ is not representing the Seller.

(4) The Broker, if any, working with the Buyer is identified on the signature page as the "Selling Company", and said Broker ☒ is OR ☐ is not representing the Buyer.

(5) If Buyer and Seller are both being represented by the same Broker, a relationship of either ☐ designated agency, OR, ☐ Facilitator OR ☐ dual agency shall exist.

    (a) **Designated Agency Assignment.** *[Applicable only if designated agency has been selected above]* The Broker has assigned affiliate licensee _____ Clay Dalton _____ to work exclusively with Buyer as Buyer's Designated Agent and affiliate licensee _____ Jerry Sandifer _____ to work exclusively with Seller as Seller's Designated Agent. Each Designated Agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other Designated Agent.

    (b) **Facilitator.** *[Applicable only if Facilitator has been selected above]* The licensee is not working as an agent for either party in this consumer's prospective transaction. A Facilitator may advise either or both of the parties to a transaction but cannot be considered a representative or advocate for either party. "Transaction Broker" may be used synonymously with, or in lieu of, "Facilitator" as used in any disclosures, forms or agreements. [By law, any licensee or company who has not entered into a written agency agreement with either party in the transaction is considered a Facilitator or Transaction Broker until such time as an agency agreement is established.]

    (c) **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above]* Seller and Buyer are aware that Broker is acting as a dual agent in this transaction and consent to the same. Seller and Buyer have been advised that:

        1. In serving as a dual agent the Broker is representing two clients whose interests are, or at times could be, different or even adverse.

        2. The Broker will disclose all adverse, material facts relevant to the transaction, and actually known to the dual agent, to all parties in the transaction except for information made confidential by request or instructions from another client which is not otherwise required to be disclosed by law.

        3. The Buyer and Seller do not have to consent to dual agency, and

        4. The consent of the Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

        5. Notwithstanding any provision to the contrary contained herein, Seller and Buyer each hereby direct Broker, if acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position unless otherwise prohibited by law.

    (d) **Material Relationship Disclosure.** [Required with dual Agency] The Broker and/or affiliated licensees have no material relationship with either client except as follows: _____. A material relationship means one of a personal, familial or business nature between the Broker and affiliate licensees and a client which would impair their ability to exercise fair judgment relative to another client.

        Seller Initials _____      Buyer Initials _____

**B. Brokerage.** Seller agrees to pay Listing Broker at Closing the compensation specified by separate agreement. The Listing Broker will direct the closing agency/attorney to pay the Selling Broker, from the commission received, an amount, if any, in accordance with the terms and provisions specified by separate agreement. The parties agree and



Copyright 2013 © Tennessee Association of Realtors®
F65 - Commercial Purchase and Sale Agreement, Page 4 of 8        Version 02/01/2014